13 F.3d 1361
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas James DEVLIN, Defendant-Appellant.
 No. 93-30000.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided Jan. 12, 1994.
 
 Roderick K. Ermatinger, Attorneys, Inc., P.C., Missoula, MT, for defendant-appellant.
 Robert J. Brooks, Asst. U.S. Atty., Butte, MT, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Montana (Missoula).
 Before: GOODWIN, HUG, Circuit Judges, and McKIBBEN,* District Judge.
 HUG, Circuit Judge:
 
 
 1
 Thomas James Devlin appeals his jury conviction and sentence for unlawful possession of firearms by a felon, 18 U.S.C. Sec. 922(g)(1). He argues that the district court erred (1) in denying his request for a transcript of his suppression hearing, and (2) in imposing an indefinite sentence. We agree that the denial of the transcript violated Devlin's equal protection rights, and reverse and remand for a new trial. Because we reverse on this ground, we do not reach Devlin's claims about his sentence.I.
 
 
 2
 On October 18, 1991, police searched Devlin's home and found two firearms. Devlin, on probation for a state drug offense, was charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). Before trial, he moved to suppress the evidence found in his home. After holding a suppression hearing at which four prosecution witnesses testified, the district court denied this motion.
 
 
 3
 Thereafter, Devlin, who is indigent, twice requested a free copy of the suppression hearing transcript in order to prepare for trial. Although the Government had obtained an extension on a filing deadline in order to obtain a copy of this transcript, the district court refused to give Devlin a free copy because he failed to provide adequate justification for it. The prosecutor also refused to give or lend Devlin a copy of his transcript.
 
 
 4
 Devlin therefore proceeded to trial without the transcript and was convicted. The district court sentenced him to 24 months imprisonment and ordered him transported to a federal medical facility for medical evaluation and treatment before beginning his federal incarceration. This appeal followed.
 
 II.
 
 5
 We review de novo a claim that a court violated a defendant's constitutional right to prepare an adequate defense by refusing to provide a free transcript of a prior proceeding. United States v. Kirk, 844 F.2d 660, 662 (9th Cir.), cert. denied, 488 U.S. 890, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988). If the court committed a constitutional error, we must reverse unless the Government establishes that the error was harmless beyond a reasonable doubt. Id.; United States v. Rosales-Lopez, 617 F.2d 1349, 1355 (9th Cir.1980), aff'd, 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Applying this standard, we find that the district court erred in refusing to provide Devlin with a free transcript and that this error was not harmless beyond a reasonable doubt.
 
 A.
 
 6
 The Supreme Court has held that a state "must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). The Equal Protection Clause prohibits disparate treatment by a state "between classes of individuals whose situations are arguably indistinguishable." Ross v. Moffitt, 417 U.S. 600, 609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974). "[D]ifferences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." Roberts v. LaVallee, 389 U.S. 40, 42, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967) Per Curiam. While "[t]he Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' ... [i]t does require ... that indigents have an adequate opportunity to present their claims fairly within the adversary system." Ross, 417 U.S. at 612, 94 S.Ct. at 2444. Although the Court has not defined the outer limits of this principle, "there can be no doubt that the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." Britt, 404 U.S. at 227, 92 S.Ct. at 433. The Government argues that the court correctly denied Devlin's request because he failed to prove the transcript was needed for an effective defense. We disagree.
 
 
 7
 In Britt, the Court identified two factors relevant to determining whether a given transcript is necessary for an adequate defense: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." Id. With regard to the first factor, the Court stated that "[o]ur cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the specific case." Id. at 228, 92 S.Ct. at 434. Thus, "where a mistrial has occurred, courts have generally regarded a transcript of the prior trial as a tool 'reasonably necessary' to an effective defense and have deemed it error to refuse to provide the defendant with such a transcript." Rosales-Lopez, 617 F.2d at 1355 (citations omitted); United States v. Pulido, 879 F.2d 1255-57 (5th Cir.1989).
 
 
 8
 Applying the Britt factors to the instant case, Devlin has established a need for the suppression hearing transcript. Because prosecution witnesses testified at the hearing, Devlin had the same interest in obtaining copies of statements for impeachment purposes as he would in obtaining copies of statements made at a prior trial. The transcript was important enough that the Government requested a continuance to obtain it; basic fairness mandates that Devlin have a copy as well.
 
 
 9
 In addition, the Government has not shown that Devlin had alternative devices available. See Britt, 404 U.S. at 227, 229, 92 S.Ct. at 433, 434. The suggestion that he could have borrowed the Government's transcript is disingenuous: Devlin's counsel did ask the Government for a copy of the transcript and the Government refused to provide it. The Government did not offer any appropriate explanation for this refusal. The cost would have been minimal, and the transcript would have placed the defendant on equal footing with the prosecution.
 
 
 10
 We also reject the Government's arguments that Devlin's counsel was present at the suppression hearing and could have impeached the witnesses from his notes or asked the court reporter to read back relevant portions of the suppression hearing at trial. Courts have repeatedly recognized that counsel's memory or notes and access to the court reporter at trial are not adequate substitutes for a transcript of a prior proceeding. Britt, 404 U.S. at 229, 92 S.Ct. at 434; Williams v. Oklahoma, 395 U.S. 458, 459, 89 S.Ct. 1818, 1819, 23 L.Ed.2d 440 (1969) (rejecting suggestion that defense counsel could have relied on his memory). "A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." Britt, 404 U.S. at 230, 92 S.Ct. at 435. To be most effective to Devlin, the transcript should have been made available before the trial so that his counsel could prepare his strategy. The transcript's value is lost if Devlin's counsel must rely on his memory or notes.
 
 
 11
 Neither fairness nor efficiency supports imposing a preliminary requirement that Devlin prove he had a particular need for the transcript. See id. at 228, 92 S.Ct. at 434. Lawyers cannot predict with certainty when a given witness's statement will prove valuable at trial. While Devlin's hindsight on what he may have done is pure speculation, he does demonstrate that the transcript was valuable to him. As the present case illustrates, denying a transcript request can lead to lengthy appeals and reversals, wasting more government resources than it saves. Courts should therefore routinely grant indigent defendants' timely requests for free transcripts of significant prior proceedings, unless a substantially equivalent alternative device is available. Here, the Government failed to establish that a practicable alternative existed. In view of the foregoing, we conclude that the court erred in denying Devlin a copy of the transcript.
 
 B.
 
 12
 Having reviewed the record, we do not find this error harmless beyond a reasonable doubt. This court applied harmless error analysis to a denial of a suppression hearing transcript in United States v. Rosales-Lopez, 617 F.2d 1349 (9th Cir.1980). In Rosales-Lopez, an indigent defendant requested a free copy of the transcript so that he could impeach witnesses at trial. We held that the denial of the transcript was harmless error beyond a reasonable doubt because the defendant was not unduly prejudiced. Id. at 1355. Only two minor inconsistencies existed between the lengthy testimony given by the witness at both the suppression hearing and the trial. Id. at 1356.
 
 
 13
 We observed in Rosales-Lopez that circuit courts have been less willing to find error in the failure to provide transcripts of preliminary proceedings, id., as opposed to transcripts of a mistrial, although the constitutional issues at stake are the same. See, e.g., Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam). Rather, in cases involving the denial of a preliminary hearing transcript, the courts have examined the actual prejudice to the defendant. Rosales-Lopez, 617 F.2d at 1356 (citations omitted).
 
 
 14
 In contrast to Rosales-Lopez, we conclude that Devlin has established actual prejudice. The Government's case against Devlin relied primarily on the credibility of its witnesses. The trial judge himself stated that the trial would "turn on which witnesses ... the jury does believe, which they accept, [and] which testimony they reject." In cases whose outcome turns on witness credibility, the potential value of a transcript for impeachment purposes is obvious.
 
 
 15
 Further, upon review of the record, we conclude that the inconsistencies in the testimony between the two court proceedings are more than trivial, thus distinguishing this case from Rosales-Lopez. For example, at trial the Government argued that Devlin lived alone, and therefore constructively possessed the firearms seized from his home. However, several prosecution witnesses who testified at both proceedings provided conflicting testimony that placed doubt as to whether Devlin in fact lived alone. At the hearing, one officer testified that he did not know in which room the satchel containing the firearms was found. At trial, he stated precisely where it was found. The same officer's testimony was incongruous regarding the position of the gun inside the satchel, the sounds heard inside the house, and the method of entering the house. Another officer's testimony conflicted regarding a phone number found on the satchel, the extent and duration of the search, his own examination of the satchel and his observation of another officer's examination of the satchel, and the purpose of the search. Further, a third officer testified inconsistently as to the method of entering the house and the extent of the search inside.
 
 
 16
 Even aside from these specific inconsistencies in the testimony, there is another distinct reason why we should reverse. The Government attorneys regarded the transcript as sufficiently important to have requested a copy for themselves. Devlin asked both the prosecution and the court for a copy, but was denied. The cumulative effect of the inconsistencies, coupled with the lack of overwhelming evidence of guilt leads us to conclude that Devlin suffered actual prejudice from the denial of the suppression hearing transcript. The Government failed to carry its burden of proving that the denial was harmless beyond a reasonable doubt.
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Howard D. McKibben, United States District Judge for the District of Nevada, sitting by designation