**Richmond**
LARRY DONNELL ANDERSON
v.
COMMONWEALTH OF VIRGINIA
No. 0180-93-2
Decided November 15, 1994

Counsel

Susan D. Hansen, Assistant Public Defender (David J. Johnson, Public Defender; Jody Jacobson Pruett, on brief), for appellant.

Richard B. Smith, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

Opinion

BENTON, J.—Larry Anderson's first trial for burglary and grand larceny resulted in a mistrial when the jury was unable to reach a verdict. The Public Defender who represented Anderson moved the trial judge to grant her a free transcript of Anderson's first trial. The Commonwealth joined in Anderson's motion, but the trial court denied the motion. Anderson was convicted of burglary and petit larceny at the second trial. He contends on this appeal that the trial judge violated his rights to equal protection and due process of law by denying him a transcript of the first trial. We reverse the convictions and remand for a new trial.

## I.

At the first trial, Ronald McWilliams testified that he arrived at his home at 9:45 p.m. and discovered a man inside. When McWilliams yelled, the man ran through the house and out a rear door. McWilliams testified that when he entered his house he was about six feet away from the man. He testified that he saw the man for a couple of seconds and that "it looked like it was . . . the defendant." He further testified that he did not see whether the man had anything in his hands.

On the floor by the door, McWilliams saw his radio, his video recorder, and an identification card belonging to Anderson. McWilliams testified that the picture on Anderson's identification card was that of the man who was in his house.

Anderson testified that at the time of the burglary he was at home watching a football game on television. He also testified that he lost his wallet four days before the incident and that he had not seen his identification card since he lost his wallet.

In her closing argument, Anderson's attorney focused upon the weaknesses in McWilliams's identification of Anderson as the intruder. She noted that Anderson had a crossed eye, that Anderson's eye condition was an obvious physical characteristic, and that McWilliams did not describe it to the police. She also argued that the police did not attempt to get fingerprints from the identification card. When the jury was unable to agree on a verdict, the trial judge declared a mistrial.

After the trial, Anderson's attorney moved the judge to provide Anderson a free copy of a transcript of his first trial. She informed the trial judge that the victim might change his testimony because he had heard closing argument concerning his failure to notice Anderson's obvious physical trait and his testimony concerning the robber's hands. Stating that "it would help to insure justice in this case," the Commonwealth's Attorney joined in the motion. The trial judge denied Anderson's motion for a transcript. When Anderson's attorney informed the judge that Anderson was indigent and was entitled under the law to have a transcript prepared by the Commonwealth, the trial judge responded that "[t]he Public Defender's Office has a budget just like everybody else does."

Prior to the second trial, Anderson's attorney renewed the motion for a transcript. The trial judge again denied the motion and remarked that it was unnecessary because the same court reporter was transcribing the testimony. At trial, McWilliams testified that he was five feet from the intruder and that the intruder was carrying his VCR with both hands as he fled. He also testified that "[t]here is no doubt in [his] mind" that Anderson was the intruder and that "[s]ometimes . . . I can lay down and I can see him in my mind asleep. . . . If I put my life on the line I knew that was the man."

Anderson again testified in his defense. The Commonwealth's Attorney had a transcript from the first trial and used it in the cross-examination of Anderson. Despite Anderson's insistence that he was testifying exactly as he had done in the first trial, the Commonwealth's Attorney used his transcript in an attempt to show a discrepancy between Anderson's testimony in the first trial and his testimony in the second trial.

## II.

■ The Supreme Court of the United States has invoked the "constitutional guarantees of due process and equal protection" in holding that indigent defendants are entitled to the basic tools necessary to prepare an adequate defense or appeal when those tools are available to others for a price. *Griffin v. Illinois*, 351 U.S. 12, 17 (1956). Following *Griffin*, the Supreme Court of Virginia held that refusing an indigent defendant a free transcript of the trial court record in order to perfect an appeal constituted a denial of fundamental constitutional rights. *Cabaniss v. Cunningham*, 206 Va. 330, 334-35, 143 S.E.2d 911, 914 (1965).

■ In a later decision, the Supreme Court of the United States extended the principle announced in *Griffin* and held that, following a mistrial, "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *accord Young v. Commonwealth*, 218 Va. 885, 886-87, 241 S.E.2d 797, 798 (1978). In determining whether a defendant needs a free transcript, two factors are relevant: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a tran-

script." *Britt*, 404 U.S. at 227.

 The value of the transcript to Anderson is evident considering the events of the two trials. Because there were no other witnesses, this case rested on McWilliams's identification of Anderson as the intruder. The results of the first trial demonstrated the success of impeaching McWilliams's recollection of the events. Counsel's use of the transcript would have been a highly effective, if not the best, way to present Anderson's defense in the second trial. "In cases whose outcome turns on witness credibility, the potential value of a transcript for impeachment purposes is obvious." *United States v. Devlin*, 13 F.3d 1361, 1365 (9th Cir. 1994).

The record reflects that Anderson's counsel informed the trial judge that McWilliams had returned to the courtroom during final arguments and had heard the arguments concerning his testimony. Indeed, McWilliams's testimony concerning his recollection of the events was stronger in the second trial. He expressed greater certainty of the identification of Anderson, and he even remembered seeing Anderson with the VCR in his hands. Thus, Anderson carried his burden of proving the obvious value that a transcript would have been to his defense. *See id.* (holding that district court committed constitutional error in refusing to provide free transcript of prior hearing to indigent defendant).

 Moreover, by joining in Anderson's motion for a transcript, the Commonwealth evidenced its belief in the value of the transcript to these proceedings. Indeed, the Commonwealth acquired a copy of the transcript and used it to cast doubt on Anderson's credibility at the second trial. Nevertheless, it is unnecessary to look at this case in hindsight. The value of a transcript of a prior mistrial "can ordinarily be assumed" because it can be used as a discovery device, for trial preparation, or for impeachment purposes at the new trial. *Britt*, 404 U.S. at 228. The transcript was a valuable tool that was available for any person who had the funds to purchase it.

 The Commonwealth contends that an adequate alternative existed because the court reporter could have related the events of the first trial from her notes. The record, however, does not establish that this alternative was adequate. The Supreme Court has clearly stated that "[a] defendant who claims the right to a free

transcript does not . . . bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a Court in hindsight." *Id.* at 230. In *Britt*, the Supreme Court noted the concession made by Britt's counsel at oral argument that such an alternative would have been adequate in his case, 404 U.S. at 229, and affirmed the conviction "in the narrow circumstances of [that] case." *Id.* at 227. In addressing the ordinary case, however, the Supreme Court stated:

Moreover, we doubt that it would suffice to provide the defendant with limited access to the court reporter during the course of the second trial. That approach was aptly rejected as "too little and too late" in *United States ex rel. Wilson v. McMann*, 408 F.2d 896, 897 (CA2 1969).

*Id.* at 229.

The alternative the Commonwealth suggests is "a breeder of delay and confusion [and] [w]orst of all . . . such a ruling is apt to lead the defendant into a trap and gravely prejudice his defense." *McMann*, 408 F.2d at 897.

In sum, the alternative [of] . . . reference to the notes of the court reporter at the first trial when a possible conflict in testimony arose during the second trial, was not the substantial equivalent of a transcript. The alternative . . . [would not have] assisted counsel in his preparation for the second trial, nor could it be effectively used as a tool for the impeachment of a witness at the second trial.

*Turner v. Malley*, 613 F.2d 264, 267 (10th Cir. 1979).

For the reasons stated, we reverse Anderson's convictions and remand this case to the trial court for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Willis, J., and Elder, J., concurred.