COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Elder
Argued at Richmond, Virginia


ANTHONY ERNEST WHITE

v.          Record No. 2136-94-2          OPINION BY
                                          JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA                   FEBRUARY 27, 1996


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

Maureen L. White (David J. Johnson, Public
Defender, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.



Anthony Ernest White appeals his convictions on two counts
of malicious wounding, two counts of the use of a firearm in the
commission of a malicious wounding, one count of grand larceny,
and one count of possession of a firearm after having been
convicted of a felony.  White contends that the trial court erred
by denying his motion for a transcript at state expense of his
first trial, which ended in a mistrial; by admitting into
evidence a 9mm handgun and expert testimony regarding the gun;
and by failing to strike the evidence as to the grand larceny
charge.  We hold that the trial court did not commit reversible
error and we affirm the defendant's convictions.

## I. Transcript

After the defendant's first trial was declared a mistrial
because the jury was deadlocked, the trial court scheduled a

second trial for September 28, 1994.  On September 23, 1994, the defendant, an indigent, filed a motion for the court to provide him a transcript of the first trial.  On September 26, the trial judge heard and denied the motion, stating, "the Court of Appeals might reverse me but I don't [provide transcripts at state expense] because if he were paying his own way he probably wouldn't have it done.  If there is some conflict, material conflict, in the evidence which [the defendant] point[s] out, the Court Reporter will be here with her notes, so she can check her notes and find out."  In addition, the trial judge stated that, "I think the motion comes late . . . I just don't think a normal person could write that up that fast."

"[A]bsent a showing of good cause for delay, a defendant may waive his right to a copy of mistrial transcripts if he does not timely request them so as to avoid disruption of the subsequently scheduled trial."  United States v. Talbert, 706 F.2d 464, 470 (4th Cir. 1983).  Here, the defendant moved the court for a copy of the transcript five days before the second trial was scheduled to begin; the hearing on the motion was held two days before trial.  The record does not indicate a reason for the delay, nor does it show that the trial judge determined whether the court reporter had time to prepare a transcript before the second trial.  Therefore, the record does not establish that granting the request would have disrupted the scheduled trial.  Moreover, the trial judge indicated that he denied the transcript because,

in his judgment, a non-indigent defendant would not have requested the transcript and because the court reporter's notes would be available and would be an adequate substitute for the transcript. Accordingly, we hold that the defendant made a timely motion for a transcript of the first trial.

The state must, as a matter of equal protection, provide an indigent defendant with the basic tools of an adequate defense, and there is no doubt that "the [s]tate must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense." Anderson v. Commonwealth, 19 Va. App. 208, 211, 450 S.E.2d 394, 395-96 (1994) (quoting Britt v. North Carolina, 404 U.S. 226, 227 (1971)). "In determining whether a defendant needs a free transcript, two factors are relevant: `(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.'" Id. at 211-12, 450 S.E.2d at 396 (quoting Britt, 404 U.S. at 227).

In Britt, the Supreme Court noted that the value of a transcript from the first trial "can ordinarily be assumed," and that it is not necessary for a defendant to show "particularized need." Id. at 228. Moreover, the Court expressed "doubt that it would suffice to provide the defendant with limited access to the court reporter during the course of the second trial." Id. at 229. In Anderson, we noted that "the alternative [of] . . .

reference to the notes of the court reporter at the first trial when a possible conflict in testimony arose during the second trial, was not the substantial equivalent of a transcript." Anderson, 19 Va. App. at 213, 450 S.E.2d at 396-97 (quoting Turner v. Malley, 613 F.2d 264, 267 (10th Cir. 1979)); see also United States v. Devlin, 13 F.3d 1361, 1364 (9th Cir. 1994) (holding that "ask[ing] the court reporter to read back relevant portions of the suppression hearing at trial" is not an adequate substitute for the transcript); United States ex rel. Wilson v. McMann, 408 F.2d 896, 897 (2d Cir. 1969) (holding that limited access to court reporter during second trial constitutes "a case of too little and too late").  But see United States v. Tyler, 943 F.2d 420, 423 n.4 (4th Cir.) (stating, in dicta, that access to court reporter is probably not limited when the trial court interrupts the trial to allow the defendant to examine the reporter's notes), cert. denied, 502 U.S. 1008 (1991).

Here, the trial judge stated prior to trial that he would instruct the court reporter to have the notes from the first trial available during the second trial in the event material conflicts in testimony developed.  This limited access to the reporter's notes did not enable the defendant to use the notes prior to trial in preparation of "an effective defense."  As to whether a court reporter's notes might be a sufficient alternative to a transcript, the Supreme Court observed in Britt that "[i]t appears that the reporter would at any time have read

back to counsel his notes of the mistrial, well in advance of the second trial." 404 U.S. at 229 (emphasis added). However, in the present case, in order for counsel to identify material conflicts in the testimony presented at the second trial, she would have had to rely upon her memory or personal notes of the first trial. In this vein, the Supreme Court stated, "We have repeatedly rejected the suggestion that in order to render effective assistance, counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial." Id. Under the circumstances of this case, having the court reporter's notes available at trial was not a sufficient alternative to providing the defendant a transcript. We hold, therefore, that the trial judge erred in failing to order a transcript or in determining whether a transcript could have been provided without disrupting the trial schedule.

Although the trial judge erred by denying the defendant's request for a copy of the transcript, we must determine whether the error was harmless. See Tyler, 943 F.2d at 423. "Constitutional error . . . is harmless only when the reviewing court is `able to declare a belief that it was harmless beyond a reasonable doubt.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

The defendant contends that Yvette Washington's testimony at the second trial was more specific than her testimony at the

first trial.  For instance, he alleges that Washington was more specific about how many times the defendant visited her apartment on the night of the crimes, and she testified that the defendant told her that he had been in a scuffle with two "officers" as opposed to two "people."  Furthermore, the defendant notes that Washington did not testify at the first trial that she saw the defendant holding what appeared to be a gun clip.

Nevertheless, even had the purported discrepancies in Washington's testimony been considered sufficient to impeach her,[1] the other evidence of the defendant's guilt is overwhelming.  See Harrington v. California, 395 U.S. 250, 254 (1969); Schrum v. Commonwealth, 219 Va. 204, 213, 246 S.E.2d 893, 899 (1978); see also State v. Brown, 293 S.E.2d 569, 578 (N.C.), cert. denied, 459 U.S. 1080 (1982).  Both Officers Niedhammer and Hockman positively identified the defendant as the person who shot them.  Officer Niedhammer testified that after his scuffle with the defendant, his handgun was missing.  Latonya Alexander testified that on the night of the shooting she heard a gunshot and rushed to her window, whereupon she saw the defendant and two white men beside a car.  According to Alexander, the defendant turned around and she saw "fire come out [of] the gun" he was

---

[1] Defense counsel specifically questioned Washington about her failure to mention the gun clip at the first trial, which was the most significant discrepancy in her testimony.  Therefore, although the court reporter's notes were not a sufficient alternative device to the transcript, they did serve to mitigate the prejudice that resulted from the denial of the defendant's equal protection right to the transcript.

holding.  Brenda Brinkley testified that the defendant came to her apartment in the early morning hours of March 17 and asked her to arrange an exchange of a 9mm gun for cocaine with a group of people who lived across the street from Brinkley.  Brinkley arranged the exchange, and the defendant went across the street and returned a few minutes later with cocaine.  The next morning, she retrieved a 9mm gun from the neighbors with whom she had arranged the exchange, and gave the gun to the police.  The Commonwealth subsequently determined that the gun Brinkley retrieved was Officer Niedhammer's gun and that it was the gun used in the shootings.

Although the first trial resulted in a hung jury, the record does not suggest that any "significant conflicts in the evidence" existed.  Schrum, 219 Va. at 213, 246 S.E.2d at 899.  Based upon our examination of the record, the trial judge's error in failing to provide the defendant with a copy of the transcript from the first trial was, in this instance, harmless beyond a reasonable doubt.

## II. Handgun and Expert Testimony

The defendant, citing Stevenson v. Commonwealth, 218 Va. 462, 237 S.E.2d 779 (1977), contends that the trial judge erred by admitting into evidence Officer Niedhammer's 9mm handgun.  He contends that the evidence identifying it as having come from the defendant was inadmissible hearsay, and thus, that the expert testimony regarding the gun was admitted without proper

foundation.  The defendant asserts that Brenda Brinkley's testimony that she retrieved the gun from her neighbors was hearsay because it necessarily included the neighbors' implied assertion that the gun given to Brinkley was the handgun given them by the defendant in exchange for cocaine.

In Stevenson, a police officer testified that he went to Stevenson's residence in Maryland and asked Stevenson's wife to retrieve the clothing her husband wore the day of the murder. She gave clothing to the officer.  Id. at 464, 237 S.E.2d at 781. The Supreme Court held that the officer's testimony concerning Mrs. Stevenson's conduct "was intended as a nonverbal assertion for the purpose of showing that the shirt not only belonged to Stevenson but was in fact worn by him on the day of the crime." Id. at 465, 237 S.E.2d at 781-82.  The Court held that testimony concerning the wife's conduct in response to the request was hearsay and that admission of both "the shirt and the result of the scientific tests conducted thereon was without proper foundation."  Id. at 466, 237 S.E.2d at 782.

The holding in Stevenson does not control this case.  In Stevenson, the wife's conduct in response to the officer's request for the shirt Stevenson was wearing "formed the basis of the Commonwealth's argument that [Stevenson] was wearing the shirt at the time the crime was committed."  Id.  Her conduct in retrieving the shirt was an implied assertion that Stevenson was wearing the shirt on the night of the crime.  Here, Brinkley

testified that she arranged, at the defendant's request, an exchange of a handgun for cocaine between the defendant and her neighbors and that upon request from the police she went to her neighbors and retrieved a handgun. While one may infer that the handgun Brinkley retrieved was the one the defendant had exchanged, that inference flows from all the circumstantial evidence in this case and not merely from the alleged hearsay, as was the case in Stevenson. Unlike Stevenson, the officers in this case did not testify that they asked Brinkley to retrieve the defendant's gun. Brinkley did not testify that the neighbors said this was the defendant's gun. Brinkley did not testify as to what she asked of the neighbors or what they said or did in response to her request. She testified only that she obtained a 9mm handgun from them.

Circumstantial evidence, other than the neighbors' act of giving the gun to Brinkley, connected the defendant with the 9mm handgun introduced into evidence. Both Officers Niedhammer and Hockman testified that the defendant shot them. Officer Niedhammer testified that during the scuffle with the defendant he discovered that his 9mm handgun was missing. Niedhammer also testified that he saw the defendant leaving the scene with a gun. Yvette Washington testified that shortly after the shootings she saw the defendant holding a gun clip. Brinkley testified that the defendant visited her apartment on the night the crimes were committed and asked her to contact her neighbors and arrange an

- 9 -

exchange of a 9mm handgun for cocaine. After Brinkley arranged the exchange, the defendant went across the street to the neighbors' house and returned several minutes later with cocaine.

The following morning, Brinkley retrieved a 9mm handgun from the neighbors with whom she had arranged the exchange. That gun was later identified as Niedhammer's gun. The trier of fact did not have to rely on a nonverbal assertion by the neighbors to connect the defendant with the gun introduced at trial. Proof that Niedhammer's gun was missing after the scuffle with the defendant, that the defendant was seen leaving the scene with a handgun, that the same evening the defendant arranged an exchange of a gun for drugs, and that Officer Niedhammer's gun was retrieved from the persons who purportedly exchanged drugs for the gun, are circumstances which prove that the handgun admitted in evidence was taken by the defendant from Niedhammer. The trial court did not err by admitting the gun and the expert's ballistics testimony that the gun was used to shoot Officer Niedhammer.

### III. Sufficiency of the Evidence

After the jury returned the verdicts, the trial judge stated that he assumed the defendant was moving "to set the verdict aside [as] contrary to the law and evidence," whereupon the trial judge overruled the motion. Although objection in this form is not sufficient to preserve a challenge to the sufficiency of the evidence, see Rule 5A:18, it is well established that "[t]he

purpose of Rule 5A:18 is to require a party to raise an issue in a timely fashion before the trial judge so the court has opportunity to address the issue and prevent unnecessary appeals." Brown v. Commonwealth, 8 Va. App. 474, 480, 382 S.E.2d 296, 300 (1989). A general objection that the verdict is contrary to the law and the evidence fails to identify with specificity in what respect the defendant considers the evidence to be deficient. Here, however, the trial judge preempted the defendant from making a motion to set aside the verdict and ruled ex mero motu the evidence sufficient to support the grand larceny charge. For counsel to have objected further after the trial court's ruling would have been redundant and argumentative. We hold, therefore, that the trial court ruled on the issue of whether the evidence was sufficient as to the grand larceny charge. For this reason, the issue was preserved for appeal.

"In considering the sufficiency of the evidence to support the convictions, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Id. at 480-81, 382 S.E.2d at 300. Officer Niedhammer discovered that his handgun was missing during the scuffle with the defendant, and he saw the defendant leave the scene of the crime holding a handgun. Yvette Washington testified that the defendant possessed what appeared to be a gun clip, and Brenda Brinkley testified that the defendant wanted to meet with some of her neighbors to exchange a

9mm handgun for cocaine.  The handgun that Brinkley recovered from the neighbors the following morning was identified as Officer Niedhammer's gun.  We hold that this evidence is sufficient, viewed in the light most favorable to the Commonwealth, to support the defendant's conviction for grand larceny of Officer Niedhammer's 9mm gun.

For these reasons, we affirm the defendant's convictions.

<u>Affirmed.</u>