COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Senior Judge Cole
Argued at Richmond, Virginia


LONNIE JEROME GAINES, III

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1354-98-4         JUDGE JAMES W. BENTON, JR.
                                         JULY 6, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    F. Bruce Bach, Judge

        S. Jane Chittom, Appellate Counsel (Elwood
        Earl Sanders, Jr.; Public Defender
        Commission, on brief), for appellant.

        Virginia B. Theisen, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     The trial judge acquitted Lonnie Jerome Gaines, III, of

receiving stolen goods, the charge contained in Count I of the

indictment, and convicted him of obtaining money by false

pretenses in violation of Code § 18.2-178, the charge in Count II

of the indictment.  Gaines contends the evidence was insufficient

to support the conviction because (1) he made no false

representation, (2) the owner was not induced by a false

representation to transfer money, and (3) the judgment of

acquittal on the charge of receiving stolen goods precluded the

conviction of obtaining money by false pretenses.  The

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Commonwealth concedes that the evidence was insufficient to prove the owner was induced by a false representation to transfer money. For the following reasons, we reverse the conviction.

I.

Lonnie Jerome Gaines, III, was indicted and tried on two indictments, charging obtaining money by false pretenses and receiving stolen goods. The Commonwealth's evidence proved that an employee of Nordstrom's Department Store at Montgomery Mall in Maryland saw a young man, who was not Gaines, remove a tuxedo and leave the store without paying for it. The employee followed the young man out of the store, saw him enter a car, and noted the car's description and license plate number. The employee notified other Nordstrom stores to be alert for someone attempting to return the stolen tuxedo. The tuxedo was size 48XL and had a retail price of $995.

One and a half hours later, Donnie Martin and Gaines approached a salesman employed at the Nordstrom's store in Tysons Corner, Virginia. Martin removed a tuxedo from a bag and said he wanted to return it. Martin told the salesman he wanted to return the tuxedo because "it was given to him and . . . it's not his right size." The salesman, who had been informed that a tuxedo, size 48XL, had been stolen from the store at Montgomery Mall, asked Martin for a driver's license. Gaines offered the salesman his driver's license. The salesman accepted Gaines' driver's license, went to an office, and called a security employee. When

-

the security employee arrived, the salesman wrote Gaines' name and address on the merchandise ticket. The salesman then returned to the register and asked whether they wanted the refund in cash or credited to a card. Gaines said cash. The salesman entered the return on the cash register, escorted Gaines and Martin to customer service, gave the cash register documents to a clerical worker, and told the worker to give the money to Gaines. The clerical worker gave Gaines an amount in excess of $1,000, which represented the sales price of the tuxedo plus a refund of tax.

Acting on a description of the car used by the thief at the Montgomery Mall store and information that two persons were returning the stolen tuxedo to the Tysons Corner store, Officers Bennett and Turner located the car and waited. The officers saw Martin exit the store and enter the car on the passenger side. Gaines then exited the store "carrying money" and sat on the driver's seat. The officers arrested Gaines and Martin and recovered $400 in cash from the glove compartment in front of Martin and $644 from the floor below Gaines.

When the officers read Miranda warnings to Gaines, Gaines told the officers that Martin, his friend, had asked Gaines to meet Martin at Montgomery Mall and give Martin a ride. According to Gaines, as he arrived at the mall, "Martin jumped in the car with a suit in his hand and said let's go, let's go." Gaines said Martin asked him to return the suit to another Nordstrom's store. According to Gaines, when he asked why Martin did not return the

-

tuxedo to the Montgomery Mall store, Martin replied that he did not know and that he did not have identification.  Martin said the tuxedo was worth $900 and offered Gaines $500 if he returned the suit.  When the officers asked Gaines "didn't you think the suit could have been stolen," Gaines responded that he "thought something was probably wrong with the suit, but [he] needed the money."

As Gaines' witness, Martin testified at trial that he telephoned Gaines for a ride from Montgomery Mall.  As Gaines arrived, Martin stole the suit and left the mall.  After he entered Gaines' car, he told Gaines that the tuxedo was a gift from Martin's father, and he asked Gaines to drive to Tysons Corner.  He told Gaines he wanted to return the tuxedo but had no identification.  Martin testified that he made no offer to Gaines and that Gaines returned the tuxedo as a favor.  Martin further testified that when the police arrived, Gaines was in the process of counting and handing the money to him.

The trial judge "believe[d] beyond a reasonable doubt that [Gaines] knew that the suit was stolen . . . [because it] doesn't make any sense otherwise."  After making that finding, the trial judge convicted Gaines of the obtaining money by false pretenses indictment.  However, the trial judge acquitted Gaines on the charge of receiving stolen goods indictment.  This appeal followed.

-

II.

Gaines and the Commonwealth agree upon the elements of the
offense.

> To sustain a conviction of larceny by false
> pretenses, the Commonwealth must prove: (a)
> that the accused intended to defraud; (b)
> that a fraud actually occurred; (c) that the
> accused used false pretenses to perpetrate
> the fraud; and (d) that the false pretenses
> induced the owner to part with his property.

Wynne v. Commonwealth, 18 Va. App. 459, 460, 445 S.E.2d 160, 161
(1994) (en banc). Gaines contends, however, that the evidence
failed to prove the latter two elements. The Commonwealth
concedes that because the Nordstrom's employee knew the tuxedo
was stolen, the evidence failed to prove that any Nordstrom's
employee was induced by false pretenses to pay money. However,
the Commonwealth contends that Gaines did not preserve the other
argument for appeal.

We agree with the Commonwealth's argument that the record
contains no indication Gaines raised in the trial court the
argument that Martin, not Gaines, used false pretenses. Gaines'
argument on the motion to strike generally was that he was only
helping his friend and did not know the suit was stolen. "[I]t
is well established that the purpose of Rule 5A:18 is to require
a party to raise an issue in a timely fashion before the trial
judge so the [trial judge] has an opportunity to address the
issue and prevent unnecessary appeals." White v. Commonwealth,
21 Va. App. 710, 720, 467 S.E.2d 297, 302 (1996). The issue

-

that Gaines now urges was not preserved in this manner. Accordingly, we will not consider it.  Rule 5A:18.

### III.

Gaines also contends that the judgment of acquittal on the charge of receiving stolen goods precludes the conviction on the crime of false pretenses.  The Commonwealth argues that Gaines also failed to preserve that issue for appeal.  We agree that the record contains no indication that this issue was raised in the trial court.  Accordingly, we will not consider it on appeal.  Rule 5A:18.

For these reasons, we hold the evidence failed to prove beyond a reasonable doubt that the false pretenses induced the Nordstrom's employee to pay the money, which is an element of the charged offense.  Accordingly, we reverse the conviction. See Wynne, 18 Va. App. At 460, 445 S.E.2d at 161.

Reversed.

-