# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Wednesday the 27th day of November, 2024.*

RICHARD REBH, ET AL.,                                                              PETITIONERS,

against          Record No. 240493
                 Court of Appeals No. 0240-23-4

THE COUNTY BOARD OF ARLINGTON
 COUNTY VIRGINIA,                                                          RESPONDENT.

FROM THE COURT OF APPEALS OF VIRGINIA

This matter comes before the Court upon a petition for appeal arising from a published opinion of the Court of Appeals entering final judgment in favor of the petitioners, a group of Arlington residents (collectively, the "Residents").  The respondent, the County Board of Arlington County, asks us to dismiss the petition for appeal because the Residents obtained a complete victory in the Court of Appeals that ended the case.  Agreeing with the Board, we will dismiss the petition for appeal.  We think it important, however, to briefly explain our reasons for doing so.

I.

In the circuit court, the Residents initiated a civil action challenging the Board's adoption of a land-use plan and its associated amendments.  The Residents asserted, in relevant part, three legally distinct claims.  The circuit court sustained the Board's demurrer and dismissed all claims.  On appeal to the Court of Appeals, the Residents prevailed on one of the three independent claims — the assertion that the Board had failed to provide proper notice under Code § 15.2-2204 thereby rendering its actions void ab initio.  Because that determination ended the case for these litigants, the Court of Appeals entered final judgment in the Residents' favor and did not remand the case for further proceedings.

Although the void ab initio holding resolved the case in its entirety, the Court of Appeals decided in favor of the Board on the two other claims raised on appeal.  These independent claims — alleging violations of the statutory resolution and certification requirements and uniformity requirement — involved applications of Code §§ 15.2-2225, -2226, and -2282 that are analytically distinct from the notice requirement under Code § 15.2-2204.  In a footnote, the

Court of Appeals acknowledged the "doctrine of judicial restraint" but nonetheless decided to "address the other two issues *for the purpose of resolving them* should they arise again in *future proceedings*." *Rebh v. County Bd. of Arlington Cnty.*, 80 Va. App. 754, 760 n.1 (2024) (emphases added). Concluding that "the trial court did not err in sustaining the Board's demurrer," *id.* at 765, 773, the Court of Appeals stated, "we *hold* that the Board did *not* violate the resolution and certification requirement . . . nor the uniformity requirement." *Id.* at 773 (emphases added).

## II.

Despite winning a complete victory on their primary claim, the Residents filed a petition for appeal in our Court asserting that the Court of Appeals erred in holding that their alternative claims were legally invalid. It is important that we review these issues, the Residents argue, because the Court of Appeals openly stated that its holdings on the Residents' alternative claims were intended to have the precedential effect of "resolving" these issues if and when they arise in "future proceedings." *Id.* at 760 n.1. For the following reasons, we reject the assumption made by the Court of Appeals and the consequent need for appellate review asserted by the Residents.

### A.

In Virginia, "the courts are not constituted to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative." *Commonwealth v. Harley*, 256 Va. 216, 219-20 (1998) (alteration and citation omitted). As we recently reaffirmed, "[t]he constitutionally vested 'judicial power,' does not authorize us to 'issue advisory opinions on moot questions.'" *Godlove v. Rothstein*, 300 Va. 437, 439 (2022) (citations omitted); *see also* Va. Const. art. VI, § 1. Because our duty "is to decide actual controversies by a judgment which can be carried into effect," we have no authority "to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Hankins v. Virginia Beach*, 182 Va. 642, 644 (1944) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

Rendering advisory opinions "represent[s] an attenuated exercise of judicial power in which this Court 'traditionally declines to participate.'" *Hunter v. Hunter*, 298 Va. 414, 436 (2020) (quoting *Harley*, 256 Va. at 219); *see also Board of Supervisors v. Ratcliff*, 298 Va. 622, 622 (2020); *Riverside Hosp., Inc, v. Johnson*, 272 Va. 518, 526 n.2 (2006). This view of judicial restraint has a long and distinguished provenance:

> Whenever it appears or is made to appear that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded. Only real controversies and existing rights are entitled to invoke the exercise of their powers.

*Franklin v. Peers*, 95 Va. 602, 603 (1898); *see also Harley*, 256 Va. at 219-20.

B.

Consistent with this tradition, Code § 17.1-411 permits only a "party aggrieved by a final decision of the Court of Appeals" to "petition the Supreme Court for an appeal." If the petitioner is not a "party aggrieved," Code § 17.1-411, the petition for appeal must be dismissed. Chief Justice Carrico emphasized this point in *Commonwealth v. Harley*, a case in which the Commonwealth appealed a Court of Appeals decision that had affirmed the defendant's conviction. *See* 256 Va. at 219-20. The case raised the question whether the Commonwealth unconstitutionally refused to provide, at its own expense, transcripts of pretrial hearings to an indigent defendant. *Id.* at 217. The Court of Appeals had ruled *against* the defendant because the claimed error "worked him no prejudice." *Harley v. Commonwealth*, 25 Va. App. 342, 351 (1997). The Court of Appeals, however, sequenced the analysis by first ruling in *favor* of the defendant on the question whether a constitutional right to the transcript existed.

On further appeal to this Court, the Commonwealth conceded the obvious — that it "ultimately prevailed" in the Court of Appeals. *See* 256 Va. at 219. The conviction was affirmed, after all, with nothing left to be done. It was nonetheless aggrieved, the Commonwealth asserted, by the holding that a constitutional violation (*sans* prejudice) had occurred in the first place. That holding was issued in a published opinion and would be viewed as binding authority on all later panels of the Court of Appeals, all circuit courts, and all future litigants. Because this decision "will have the effect of imposing substantial new financial burdens on the Commonwealth to provide transcripts to indigent defendants who previously would not have been entitled to them," the Commonwealth argued, it had "standing" to appeal the allegedly erroneous holding. *Id.*

*Harley* left us with two possible responses. We could have resolved this anomaly by recognizing an exception to the general rule that forbids appeals by a prevailing party. In

*Camreta v. Greene*, 563 U.S. 692, 703-05 (2011), for example, the United States Supreme Court addressed an appeal from the intermediate appellate court's holding that a constitutional claim against a government official was barred by qualified immunity. That official — the prevailing party — was nonetheless permitted to appeal because of the intermediate appellate court's holding that "what [the official] did violate[d] the Constitution and he or anyone else who does that thing again will be personally liable." *Id.* at 702-03. If no appeal were allowed in this situation, the United States Supreme Court reasoned, the ruling on qualified immunity would have the effect of immunizing the constitutional ruling from further appellate review.

*Harley* took a different tack through these waters. Our doctrine of judicial restraint requires appellate courts to decide cases "on the best and narrowest ground available." *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010) (quoting *Air Courier Conf. v. American Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)).[1] This maxim reinforces the common-sense view that "courts should think hard, and then think hard again, before turning small cases into large ones." *Camreta*, 563 U.S. at 707. Influenced by these jurisprudential guardrails, *Harley* answered the Commonwealth's argument by rejecting its first premise. Whether styled as such or not, the analysis by the Court of Appeals of the constitutional issue was not a binding, precedential holding because that issue "was rendered moot" by the holding that "the error in the trial court's denial of a free transcript was harmless." *Harley*, 256 Va. at 219.

Any "concerns" about the effect of dicta-qua-holding in future cases, we reasoned in *Harley*, did not justify a further appeal to us because such concerns were "hypothetical and can only be based, at best, upon speculation and conjecture." *Id.* To be sure, the hypothetical nature

_____

[1] *See, e.g.*, *Durham v. Commonwealth*, ___ Va. ___, ___ n.2, 904 S.E.2d 203, 210 n.2 (2024); *Thomas v. Commonwealth*, 303 Va. 188, 198 (2024); *Hannah v. Commonwealth*, 303 Va. 106, 121 (2024); *Verizon Va. LLC v. State Corp. Comm'n*, 302 Va. 467, 480 n.4 (2023); *McKeithen v. City of Richmond*, 302 Va. 422, 435 n.2 (2023); *Berry v. Board of Supervisors*, 302 Va. 114, 138 n.13 (2023); *Hartford Underwriters Ins. v. Allstate Ins.*, 301 Va. 460, 474 n.13 (2022); *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 292 (2022); *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022) (per curiam); *Phillips v. Rohrbaugh*, 300 Va. 289, 313 n.8 (2021); *Evans v. Evans*, 300 Va. 134, 150 (2021); *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 58 (2021); *Logan v. Commonwealth*, 299 Va. 741, 748 n.4 (2021); *Plofchan v. Plofchan*, 299 Va. 534, 548 n.* (2021); *Butcher v. Commonwealth*, 298 Va. 392, 396 & n.4 (2020) (collecting cases employing this principle); *Commonwealth v. White*, 293 Va. 411, 419 (2017); *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (per curiam).

of the constitutional issue, if presented to us, would be no less hypothetical than when it was presented to and decided by the Court of Appeals. We thus declined to "render an advisory opinion" on this moot issue because that is what the Court of Appeals should have done. *See id.* at 220. Simply put, the Commonwealth in *Harley* could not appeal the unfavorable holding of the Court of Appeals on the constitutional issue because, whether described as a holding or not, it was simply dicta. It might be later cited as persuasive authority, but it had no binding, precedential power over the lower courts, later panels of the Court of Appeals, or anyone else. This conclusion solved the paradoxical problem of an intermediate appellate court shielding from further appellate review a self-styled holding merely by refusing to apply it to the case at hand.

C.

The same dicta-qua-holding scenario exists in the present case. After declaring the Board actions to be void ab initio, the Court of Appeals decided that the Board's actions — had they not just been deemed void — would have been in full compliance with the statutory resolution and certification requirements and uniformity mandate addressed in Code §§ 15.2-2225, -2226, and -2282. The "purpose" of these rulings, the Court of Appeals explained, was to resolve these issues "should they arise again in future proceedings." *Rebh*, 80 Va. App. at 760 n.1. But the effect of doing so was to shield from further appellate review what appeared to be precedential holdings binding all litigants, circuit courts, and panels of the Court of Appeals in future judicial proceedings. That consequence, by itself, creates a juristic anomaly that should be avoided if at all possible.

It was certainly possible to do so here. The unreviewable rulings of the Court of Appeals assumed a hypothetical scenario with two key suppositions: first, that the Board later reenacts the same or similar set of measures to replace those just declared to be a nullity, and second, that these new measures later face the same or similar claims previously asserted by the Residents. Maybe that happens, maybe not. But "[s]o far as this case is concerned, . . . and we can be concerned only with this case," *Harley*, 256 Va. at 219, the void ab initio ruling ended the case.[2]

---

[2] This scenario should not be confused with cases that are remanded by an appellate court for further proceedings in a lower court. *See, e.g.*, *Emerald Point, LLC v. Hawkins*, 294 Va. 544, 555 (2017); *Cain v. Lee*, 290 Va. 129, 136 & n.* (2015); *Smith v. McLaughlin*, 289 Va. 241, 259 (2015); *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 95 (2014); *Velocity Express Mid-Atlantic v. Hugen*, 266 Va. 188, 203 (2003); *Virginia Elec. & Power Co. v. Westmoreland-LG&E Partners*, 259 Va. 319, 324-25 (2000).

5

In Virginia, as elsewhere, a judicial decision "rendered on a purely hypothetical question has no precedential force," Bryan A. Garner et al., The Law of Judicial Precedent 133 (2016), and "if a court were nonetheless to decide a hypothetical or moot question in the course of an otherwise appropriate decision, then the principle here stated has some teeth:  reasoning not material to the decision can be disregarded as dictum."  *Id.* at 135.

III.

In sum, we dismiss the Residents' petition for appeal because we have no authority to review non-precedential, advisory opinions of the Court of Appeals.  The Residents, by succeeding on their primary claim that the Board's actions were void ab initio, won the case outright, and there was nothing left to be adjudicated by any Virginia court in this proceeding.

This order shall be published in the Virginia Reports and certified to the Court of Appeals and the Circuit Court of Arlington County.


A Copy,

Teste:

Clerk

6