COURT OF APPEALS OF VIRGINIA

Present:    Judges Annunziata, Bumgardner and Frank
Argued at Chesapeake, Virginia


ANDRE COPELAND

                                                            OPINION BY
v.        Record No. 3002-02-1          JUDGE ROSEMARIE ANNUNZIATA
                                                     FEBRUARY 10, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

S. Jane Chittom, Appellate Defender (Public Defender Commission,
on briefs), for appellant.

Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Andre Copeland was convicted after a bench trial of possession of cocaine with the intent

to distribute and possession of cocaine with the intent to distribute on school property in

violation of Code §§ 18.2-248 and 18.2-255.2, respectively.  He was sentenced to 10 years in

prison with seven years and ten months suspended.  Prior to trial, his motion to suppress the

evidence was denied.  He appeals his convictions based on claims of insufficient evidence and

the court's denial of his motion to suppress.  For the following reasons, we affirm Copeland's

convictions.

I.  Background

On appeal, we review the evidence in the light most favorable to the Commonwealth,

granting it all reasonable inferences deducible from that evidence.  Commonwealth v. Grimstead,

12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  So viewed, the evidence establishes that on

May 10, 2002, Portsmouth Police Detective David Lodge observed a car at approximately

2:46 p.m. travelling west on High Street. The car began to enter the center median of the roadway as it approached him. One of the car's tires struck the curb and was punctured. The driver nonetheless continued traveling, making a left turn into opposing traffic on Queen Street, a one-way street. Lodge engaged his emergency equipment and followed the vehicle in order to assist the driver. After travelling several feet in the wrong direction, the driver suddenly put the car in reverse and backed onto Court Street in front of Lodge's vehicle. The car then traveled across Court Street and turned right, entering the parking lot of the Court Street Baptist Church and Academy.

Lodge entered the parking lot from the opposite direction to block the car's exit. The driver of the car drove up to "the nose" of Lodge's vehicle, suddenly turned into a parking spot, quickly exited, and began to "walk away in a very brisk manner." Lodge exited his car and apprehended the driver. When he detected the odor of alcohol, Lodge walked the driver to the front of the driver's car where he placed him in handcuffs.

Copeland was seated in the front passenger seat of the car where he remained while the above events transpired. While Lodge was placing the driver in handcuffs in front of the car, he saw Copeland reach "in the area of his pocket several times." Lodge called for a back-up unit and ordered Copeland "to keep his hands up where [Lodge] could see them." Copeland continually reached "back down toward his right side" and refused to make his hands visible. Lodge testified that he "got very loud with [Copeland] and instructed him four more times to keep his hands where [Lodge] could see them and to stop going into his pockets."

After Copeland refused to comply, Lodge drew his service weapon and, without effect, pointed it at Copeland through the windshield. Lodge testified that, "even after pointing a weapon at him, identifying myself as a police officer and telling him to keep his hands out of his

pocket and to keep them where I could see them," Copeland did not comply. Copeland continued to "go into his right pocket and to the right side of his body."

When Portsmouth Police Officer C.A. Gilmore arrived, Lodge directed him to search Copeland's right pocket. Gilmore reached directly into Copeland's pants pocket and found two bags containing an off-white substance in the small watch/change pocket. Gilmore handcuffed Copeland and placed him in custody at that time. Lodge then walked around the car and observed a bag, which he suspected contained cocaine, located on the right side of the floorboard behind the front passenger seat where Copeland had been sitting. Lodge recovered the bag. Lodge testified that these events occurred in the parking lot of the Court Street Baptist Church and school where children from pre-kindergarten to the eighth grade were educated.

The drugs taken from Copeland's pocket were introduced into evidence at trial, as were the drugs found on the floorboard of the rear passenger seat of the car, together with $75 in cash found on Copeland's person. The certificate of analysis showed that the total weight of the cocaine recovered was 6.47 grams (3.01 grams found on Copeland and 3.46 grams found in the car).

Portsmouth Police Detective R.M. Holly testified as an expert in the issues of packaging and distributing of narcotics. He testified that possession of 6.47 grams was inconsistent with personal use because it represented "days and days worth" of drugs. He also noted other factors that were inconsistent with personal use and consistent with an intent to distribute, such as the "sheer size" of the cocaine, the fact that the cocaine was in "blocks," the manner in which the blocks were wrapped in individual packages, and the absence of a smoking device.

The trial court denied Copeland's motions to strike the evidence as to both charges and convicted him as charged. This appeal followed.

II.  Analysis

A.  Search of Copeland's Pocket Was Constitutionally Valid

Copeland contends on appeal that the police did not have probable cause to arrest him, that the search of his pocket was therefore unlawful, and that the drugs the search yielded were improperly admitted.  We agree that the police did not have probable cause to arrest Copeland. We find, however, that the evidence recovered from Copeland's pocket was admissible pursuant to the inevitable discovery exception to an otherwise invalid warrantless search.

1.  The Evidence Fails to Establish Probable Cause

The determination of whether police may make a warrantless search or seizure involves issues of both law and fact, which we review *de novo* on appeal.  Ornelas v. United States, 517 U.S. 690, 699 (1996); Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003).  We give deference, however, to the trial court's subsidiary determinations of fact, disturbing them only when they are clearly in error.  Ornelas, 517 U.S. at 699; Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003).

Generally, a warrantless search is presumptively invalid.  Minnesota v. Dickerson, 508 U.S. 366, 372 (1993).  A warrantless search and seizure may be upheld, however, if it is conducted incident to a lawful arrest.  Italiano v. Commonwealth, 214 Va. 334, 336, 200 S.E.2d 526, 528 (1973).  "[W]hen probable cause exists to arrest a person, a constitutionally permissible search of the person incident to arrest may be conducted by an officer either before or after the arrest if the search is contemporaneous with the arrest."  Id.

Probable cause is established by facts and circumstances which would lead a prudent person to believe that the suspect had committed or was committing an offense.  Beck v. Ohio, 379 U.S. 89, 91 (1964).

> The legal standard of probable cause, as the term suggests, relates
> to probabilities that are based upon the factual and practical

considerations in everyday life as perceived by reasonable and prudent persons. The presence or absence of probable cause is not to be examined from the perspective of a legal technician. Rather, probable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe than an offense has been or is being committed. Draper v. United States, 358 U.S. 307, 313 (1959); Schaum v. Commonwealth, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975). In order to ascertain whether probable cause exists, courts will focus upon "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976).

Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981); see also Maryland v. Pringle, 124 S. Ct. 795, 800 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.").

Furtive gestures alone have been held insufficient to establish probable cause. See People v. Superior Court, 478 P.2d 449, 454-55 (Cal. 1970) (explaining why mere furtive gestures, without more, do not establish probable cause). However, furtive gestures coupled with other indicia of criminal engagement may suffice to establish probable cause. See Sibron v. New York, 392 U.S. 40, 66 (1968) (noting that "deliberately furtive actions . . . at the approach of strangers or law officers are strong indicia of *mens rea*, and *when coupled with* specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in a decision to make an arrest" (emphasis added)); 2 Wayne R. LaFave, Search and Seizure § 3.6(d), at 319 (3d. ed. 1996) ("if police see a person in possession of a highly suspicious object or some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband, *and then* observe that person make an apparent attempt to conceal that object . . . , probable cause is then present" (emphasis added)).

Here, Officer Lodge did not have probable cause to believe Copeland had committed, or was committing, an offense. Lodge followed the car in which Copeland was a passenger because it was being driven erratically. The car's erratic movements incriminated the driver of the vehicle. When Lodge confronted the driver in the parking lot, he smelled alcohol on his breath and arrested him for driving under the influence of alcohol and for reckless driving. Lodge had no reason to believe that Copeland, a passenger in the vehicle, was involved in criminal activity. While Lodge was securing the driver near the front of the car, however, he noticed Copeland making furtive gestures. Copeland continued the suspicious movements despite several commands from Lodge to show his hands and despite the fact that Lodge pointed his weapon at him. Notwithstanding Copeland's behavior, we cannot say that it established probable cause to arrest him. Lodge did not see Copeland with an object of any kind, incriminating or otherwise. He testified only that Copeland repeatedly moved his hands into and out of his pocket and near the side of his body.

The Commonwealth's reliance on Parker v. Commonwealth, 255 Va. 96, 496 S.E.2d 47 (1998), and Farmer v. Commonwealth, 21 Va. App. 111, 462 S.E.2d 564 (1995), to buttress its argument that the police had probable cause to arrest Copeland is misplaced. In each case, circumstances other than furtive gestures and a refusal to comply with a police officer's command were proved. In Parker, the Supreme Court of Virginia found probable cause was established when the defendant placed a small object inside the waistband of his shorts while associating in an open-air drug market. Parker, 255 Va. at 106, 496 S.E.2d at 53. The police officer could see that the object was a small pink baggie because the defendant's shorts were made from a partially transparent mesh material. Id. at 107, 496 S.E.2d at 53. The officer testified that he knew from experience that pink baggies are often used to store cocaine. Id. When the police asked the defendant if he had anything in his "crotch," the defendant tightened

his shorts in an apparent attempt to keep the baggie from falling.  Id.  Here, Officer Lodge saw no suspicious object, nor did the suspicious behavior and arrest occur in an area known for its high crime rate.  Parker therefore does not support the Commonwealth's argument.

In Farmer, the police began observing the defendant after receiving an anonymous citizen complaint that someone matching the defendant's description was selling drugs.  Farmer, 21 Va. App. at 113, 462 S.E.2d at 565.  The police discovered defendant in a "prime illicit drug distribution" area engaging in activity consistent with selling drugs.  Id.  When approached by the police, the defendant fled.  Id.  During his flight, the defendant attempted to reach into his pockets and dispose of something.  Id.  The officers caught the defendant, conducted a search, and discovered illicit drugs.  Id. at 114, 462 S.E.2d at 565.  We found these facts established probable cause that the defendant was engaged in criminal activity.  Id. at 115, 462 S.E.2d at 566.  In the case before us, no such additional facts incriminate Copeland.  Officer Lodge observed nothing more than furtive hand gestures.  Contrary to the Commonwealth's position, Farmer does not support a finding of probable cause on the facts here.

We conclude therefore that the police conducted a search pursuant to an unlawful arrest.[1]

2.  The Challenged Evidence Was Admissible Because Its Discovery Was Inevitable

The Commonwealth argues in the alternative that the evidence obtained from Copeland's pocket was admissible because its discovery was inevitable.  We agree.

---

[1] Although Copeland's actions are sufficient to establish reasonable, articulable suspicion, the lawfulness of the search is not established on that ground because the search was not properly limited.  See Sibron, 392 U.S. at 65; see also Harris v. Commonwealth, 241 Va. 146, 151-52, 400 S.E.2d 191, 194 (1991); LaFave, *supra* § 9.5(b), at 272 ("[i]f the officer suspects that there is a gun at a particular location, this is hardly an excuse for foregoing a pat-down; if anything, it makes it more apparent than ever that the pat-down will be effective in confirming or dissipating that suspicion").  Here, the evidence establishes that Officer Gilmore did not perform a pat-down of Copeland.  Instead, he reached directly into his pocket.

The inevitable discovery rule provides an exception to the requirement that a search be supported by a warrant. Nix v. Williams, 467 U.S. 431, 447 (1984). The rule derives from the principle that fruits of an unlawful search are inadmissible at trial, Wong Sun v. United States, 371 U.S. 471, 487-88 (1963), if the challenged evidence "has been come at by exploitation of that illegality." Id. at 488. Conversely, if the evidence is obtained "by means sufficiently distinguishable to be purged of the primary taint," excluding the evidence does not serve the deterrent purpose of the rule. Id. (internal quotations omitted). The inevitable discovery rule is "an off-shoot of the independent source doctrine." Wilkins v. Commonwealth, 37 Va. App. 465, 475, 559 S.E.2d 395, 399 (2002).

> To come within the exception, the Commonwealth must show:
>
> (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternative line of investigation.

Walls v. Commonwealth, 2 Va. App. 639, 656, 347 S.E.2d 175, 185 (1986). Application of the doctrine cannot rest on conjecture alone, but must be grounded in historical facts. See Nix, 467 U.S. at 444 n.5; see also United States v. Allen, 159 F.3d 832, 839 (4th Cir. 1998) (noting that although "a finding of inevitable discovery necessarily rests on facts that did not occur[,] . . . by definition the occurrence of these facts must have been likely").

The issue involves a mixed question of fact and law. We defer to the trial court's factual findings unless plainly wrong or without evidence to support them, but review the ultimate question of law, the application of the inevitable discovery doctrine, *de novo*. See Trent v. Commonwealth, 35 Va. App. 248, 250, 544 S.E.2d 379, 380 (2001).

First, it is reasonable to conclude that the evidence recovered from Copeland would have been discovered by lawful means. In the course of walking around the car after securing the

driver and "checking the passenger compartment from the outside of the vehicle visually," Officer Lodge discovered the cocaine on the rear floorboard because it was in plain view. Arizona v. Hicks, 480 U.S. 321, 323 (1987). The presence of illegal drugs on the floorboard directly behind the seat where Copeland was sitting, together with the nature and persistence of Copeland's furtive movements, constitute "facts and circumstances within the officer's knowledge, . . . sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981). The confluence of these historical facts would thus have given the police probable cause to arrest Copeland on possession of the cocaine found in the car. See Pringle, 124 S. Ct. at 800-01 (holding that probable cause existed to arrest a passenger seated in the front of a car on a charge of possession of cocaine where police discovered cocaine in the backseat). It follows that the police would have lawfully arrested Copeland and conducted a search of his person incident to his arrest. Chimel v. California, 395 U.S. 752, 763 (1969). That search would have yielded the cocaine in Copeland's pocket.

Second, the leads making the discovery of the cocaine in Copeland's pocket inevitable were present before the unlawful search. The leads were comprised of 1) the erratic driving of the automobile and the arrest of the vehicle's intoxicated driver, which would have led to a lawful warrantless search of the car and the discovery of cocaine lying on the back floorboard, and 2) Copeland's furtive hand movements on the right side of his body, which would have led police to reasonably conclude that the cocaine in the automobile, a few inches from the right rear passenger wall of the vehicle, belonged to him.

Third, the police were actively pursuing another, independent line of investigation before the unlawful search of Copeland's pocket was conducted. Lodge's investigation of the driver had been initiated when he observed Copeland make his suspicious hand movements, followed

- 9 -

by repeated refusals to comply with the officer's commands. Lodge was, at that time, engaged in determining why the car was being driven so erratically and why the driver had continued to drive on a flat tire.

In short, the investigation of the driver and his car was independent of and remained untainted by the subsequent unlawful search of Copeland. See Wilkins, 37 Va. App. at 477, 559 S.E.2d at 401. Stated differently, the cocaine in the rear passenger compartment of the vehicle and in Copeland's pocket would have been discovered irrespective of the initial unlawful search of Copeland. The trial court did not err in admitting the evidence discovered in Copeland's pocket.

### B. Sufficiency of the Evidence

Copeland contends that the Commonwealth's evidence was insufficient in two respects. First, Copeland argues the evidence did not establish that he possessed the cocaine found in the backseat. Second, Copeland argues the evidence was insufficient to establish he had the intent to distribute the cocaine while on school property. We find that Copeland's first argument is without merit, and we find that Copeland's second argument is procedurally barred.

### 1. Constructive Possession Was Established

When evaluating the sufficiency of the evidence on appeal, we view the evidence in a light most favorable to the Commonwealth, granting to it all reasonable inferences that can be deduced from that evidence. Ragsdale v. Commonwealth, 38 Va. App. 421, 429, 565 S.E.2d 331, 335 (2002). Furthermore, we will not disturb the judgment of the trier of fact unless it was plainly wrong or without evidence to support it. Id.

The cocaine in the backseat of the car was admittedly not in Copeland's physical possession at the time of his arrest. The Commonwealth contends, however, that Copeland constructively possessed the cocaine. To prove constructive possession, "the Commonwealth

must show that the defendant was 'aware of both the presence and character of the substance and that it was subject to his dominion and control.' Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). 'Mere proximity to a controlled drug is not sufficient to establish dominion and control.' Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986)." Blake v. Commonwealth, 15 Va. App. 706, 708, 427 S.E.2d 219, 220 (1993). Proximity is, however, a factor that can be considered "when determining whether the accused constructively possessed drugs." Brown v. Commonwealth, 5 Va. App. 489, 492, 364 S.E.2d 773, 774 (1988). Furthermore, the defendant may possess the drugs jointly with one or more other persons. Blake, 15 Va. App. at 708, 427 S.E.2d at 220.

Here, the cocaine was found directly behind the car seat that Copeland occupied. Although his proximity to the cocaine alone does not establish possession, it was one factor the trial court could consider in reaching its verdict. Moreover, the cocaine was in plain view. Finally, the location of the cocaine was consistent with Copeland's furtive hand movements to the right side of his body and explained Copeland's repeated failures to comply with police commands to keep his hands where the officer could see them. Copeland's actions indicated that he was aware that the drugs were in the car and support the reasonable inference that he exercised dominion and control over the substance. Considering all the foregoing evidence, we cannot say that the trial court's decision was plainly wrong or without evidence to support it. Accordingly, we find that Copeland constructively possessed the cocaine found in the back of the car.

2. Challenge to Evidence of Intent to Distribute While on School Property is Procedurally Barred

Finally, Copeland contends the evidence was insufficient to establish that he traveled onto school property with the intent to distribute the cocaine while on the property. We find that this argument is procedurally barred by Rule 5A:18 because Copeland failed to raise it at trial

where Copeland argued only that "no evidence [was] presented that this was within a thousand feet of a school zone."

Rule 5A:18 promotes the correction of error at the trial level. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991). It requires that the grounds of any objection be presented to the trial court, affording the trial judge an opportunity to consider the issues intelligently and take corrective action. Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992). The rule also prevents unfairness to the opposing party "who may have been able to offer an alternative to the objectionable ruling, but did not do so, believing there was no problem." Lee, 12 Va. App. at 514, 404 S.E.2d at 737; see also Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991). Counsel may satisfy the mandates of Rule 5A:18 in several ways. Lee, 12 Va. App. at 515, 404 S.E.2d at 738. Counsel may make the grounds for his objection clear in a motion to strike the Commonwealth's evidence, or he may state the grounds in closing argument. Id. Under appropriate circumstances, counsel may also make the grounds of the objection known within twenty-one days of the court's final order. See Weidman, 241 Va. at 44, 400 S.E.2d at 167.

Here, Copeland failed to argue that the Commonwealth's evidence was insufficient to prove that he had the intent to distribute the cocaine on the school property. Copeland only argued that there was no evidence "that this was within a thousand feet of a school zone." Copeland therefore deprived the trial court of an opportunity to consider the grounds of the objection he now presents to us. Rule 5A:18 mandates that we not consider his appeal on this ground.

Copeland's contention that the trial court denied him the opportunity to make his argument is without merit. Although the trial judge interrupted defense counsel's attempt to raise and argue the point, asking counsel to proceed with his next motion, nothing in the record

- 12 -

shows that alternative avenues for preserving the objection were unavailable. Finally, Copeland's reliance on this Court's decision in White v. Commonwealth, 21 Va. App. 710, 467 S.E.2d 297 (1996), is misplaced. In White, the trial court raised *ex mero motu* a motion challenging the sufficiency of the evidence. Id. at 720, 467 S.E.2d at 302. We held that the appellant was not barred from raising that issue on appeal because the trial court essentially raised the issue for the defense. Id. Here, the trial court did not raise its own motion. For these reasons, Rule 5A:18 bars our consideration of this issue.

We further find no basis upon which to apply the ends of justice exception to this case. The ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly. Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000). Application of the ends of justice exception requires proof of an error that was "clear, substantial and material." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "The record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Akers v. Commonwealth, 31 Va. App. 521, 528 n.2, 525 S.E.2d 13, 16 n.2 (2000) (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)). When considering a sufficiency of the evidence question not properly preserved at trial, the appellant

> must do more than show that the Commonwealth failed to prove an element or elements of the offense. Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense. Such a rule would obviate the requirement for making an adequate motion to strike or a contemporaneous objection that the evidence was insufficient.

Redman, 25 Va. App. at 221, 487 S.E.2d at 272. The exception therefore will not be invoked unless the evidence affirmatively shows "that an element of the offense did not occur." Id. at 222, 487 S.E.2d at 273.

Copeland argues that the record affirmatively shows that the police chased the automobile into the school parking lot and that the absence of his intent to distribute cocaine on school property follows from that evidence. See generally Toliver v. Commonwealth, 38 Va. App. 27, 561 S.E.2d 743 (2002). We disagree. The inquiry this Court must make, as articulated in our decision in Redman, is whether the evidence affirmatively establishes that Copeland did not intend to distribute the drugs on school property. Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987) ("If the record before us proved that, under no circumstances, could [the omitted element be established], there would be a reasonable basis for this court to consider the issue for the first time on appeal."). Here, no evidence *affirmatively* shows that the element of intent to distribute drugs on school property was not established. See Redman, 25 Va. App. at 222, 487 S.E.2d at 273. We therefore decline to apply the ends of justice exception to Rule 5A:18 and consider the merits of his sufficiency claim.

Affirmed.