COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Kelsey and Senior Judge Overton
Argued at Salem, Virginia


JAMES RANDOLPH NEWSOME, JR.

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1987-03-3               JUDGE ROSEMARIE ANNUNZIATA
                                                  SEPTEMBER 28, 2004
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                          Joseph W. Milam, Jr., Judge

              Charles C. Cosby, Jr. (Boone, Beale, Cosby & Long, on brief), for
              appellant.

              Kathleen B. Martin, Assistant Attorney General (Jerry W. Kilgore,
              Attorney General, on brief), for appellee.


        James R. Newsome, Jr., appeals his conviction for possession of a Schedule II controlled

substance and possession of a firearm while in possession of a Schedule II controlled substance,

in violation of Code §§ 18.2-248 and 18.2-308.4, respectively.  He argues that the trial court

erred in denying his motion to suppress because the seizure of the evidence, which was obtained

pursuant to a search warrant, was preceded and tainted by an unconstitutional "protective sweep"

of his residence.  He argues further that the evidence was insufficient as a matter of law to

sustain his convictions.  For the reasons that follow, we affirm.

                                    I.  Background

        In accord with our usual standard of review, we recite the evidence and the inferences

that may be reasonably drawn from the evidence in a light most favorable to the Commonwealth

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

as the party prevailing below. Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003).

So viewed, the evidence establishes that, on the afternoon of January 7, 2003, Detective Dennis Haley of the Danville Police Department went to Newsome's residence to arrest him on two charges of selling methadone. Haley had purchased the methadone from Newsome in an undercover narcotics operation in August 2002. Haley planned to execute the arrest warrant by making another attempt to purchase drugs from Newsome. As planned, Haley walked onto the front porch of the residence, knocked on the door, and rang the doorbell. From that vantage point, he heard Newsome's voice inside the house engaged in conversation, but he could not "make out exactly" what was being said. When Newsome opened the door, Haley explained that he had been there during the summer and wanted to get some more "stuff." Newsome replied that he was not "doin[g] anything" and began to reenter the house. At that point, Haley showed his badge, identified himself as a police officer, and grabbed Newsome's right arm. Newsome "jerked away" and struggled with Haley in the doorway despite repeatedly being told by the officer that he was under arrest. Haley subsequently subdued Newsome as Officers Wilson and Tate arrived.

In the hearing on Newsome's motion to suppress, Haley testified that he had seen two rifle boxes on the porch while purchasing drugs from Newsome on prior occasions. On this occasion, Haley observed the butt of a rifle behind the left side of the doorway while he stood on the porch talking to Newsome. He also heard a voice in the background while he conversed with Newsome but could not determine its origin. After handcuffing Newsome, Haley left him in Officer Wilson's custody while he and Officer Tate made a protective sweep of the residence. Haley stated he entered the residence to perform the sweep because he "heard another voice inside the residence, . . . saw the rifle . . . at the doorway[,] . . . did not want anyone coming up

behind us with the weapon while we were outside with Mr. Newsome[,] and . . . to make sure there was no one else in there who could do us harm."

In conducting the sweep, Haley moved towards the rear of the house, opening the door to each room he passed and stating, "Danville Police Department . . . is anyone here?" After opening a bathroom door, Haley observed a small metal pipe on the floor that he believed was used for smoking cocaine. Determining that the voice he heard was coming from the rear bedroom, Haley entered it. In the bedroom, Haley saw two oblong and three round tablets lying in front of the television set. The coating of one tablet appeared partially dissolved. Based on his training and experience, Haley believed the partially dissolved tablet was oxycodone intended for illicit use. A basket containing multiple bottles labeled "Hydrocodone" were observed on a shelf. Haley also saw multiple rifles stacked against the bedroom wall as well as openly displayed gun cases. Haley determined that the voice he heard was coming from the television set in the bedroom.

Haley seized none of the items he observed. Instead, Haley sought the issuance of a search warrant from a magistrate and, pursuant to the warrant, he recovered both weapons and contraband including two loaded revolvers from a dresser drawer in the rear bedroom, a postal scale, Newsome's identification card, and various tablets and capsules. Haley also found a prescription medication guide entitled "The Pill Book" and several empty hydrocodone bottles. One of the bottles bore the name "Jody Patterson." Two quart jars containing a small amount of bootleg whiskey were found under the nightstand. A "tote case" holding 15 empty pill bottles that had contained hydrocodone, Percocet, methadone, and Xanax was found near the bed. The names of the prescription holders had been scratched off some of the bottles.

In the living room, Haley found a candy box beneath a table containing $2,289 and two plastic vials of pills. One of the vials contained ten round white tablets and four oblong yellow

tablets, which laboratory analysis determined to be acetaminophen and oxycodone, a Schedule II drug. The cash found in the box was arranged sequentially in descending order: five one-hundred dollar bills, fifty twenty-dollar bills, twenty-six ten-dollar bills, seventy-eight five-dollar bills, and 139 one-dollar bills. Haley additionally found five twenty-dollar bills in Newsome's breast pocket when he searched him incident to arrest. In the dining room, Haley found a switchblade knife, two firearms, and several boxes of ammunition. Glass and metal tubing pipes were found on the dining room table.

The police subsequently learned the defendant's elderly mother also lived in the house. She had several health problems for which she took medication, but the evidence established she did not take "pain killers."

Newsome's motion to suppress was denied. He was subsequently convicted of possession of a Schedule II controlled substance and possession of firearms while in possession of a Schedule II controlled substance and sentenced to eight years in prison, three years suspended. This appeal followed.

## II. The Trial Court Did Not Err in Denying Newsome's Motion to Suppress

### A. Standard of Review

The standard under which we must review the denial of a motion to suppress is well established.

> On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*), but we review *de novo* the trial court's application of legal standards such as reasonable suspicion to the particular facts of the case. See Ornelas v. United States, 517 U.S. 690, 699 (1996).

McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (*en banc*).

B.  The Police Acted Reasonably in Performing Protective Sweep

Newsome contends the evidence the police recovered from his residence should have been suppressed because, after arresting Newsome on his porch, the police unreasonably believed a protective sweep of the residence was needed and improperly entered his residence without a warrant.  We disagree.

The United States Supreme Court case of Maryland v. Buie, 494 U.S. 325 (1990), controls the outcome here.  In Buie, the Supreme Court considered the constitutionality of a "protective sweep," a measure it defined as "a quick and limited search of the premises, incident to an arrest[, which is] . . . conducted to protect the safety of police officers or others[, and] . . . is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  Id. at 327.  The Court held that such protective sweeps are constitutional provided there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."[1]  Id. at 334.  The Court further emphasized that the protective sweep "may extend only to a cursory inspection of those spaces where a person may be found.  The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger."  Id. at 335-36.

Here, Haley's entry into the residence was based on articulable facts which gave rise to a reasonable belief that the residence harbored an individual who could pose a danger to those on the arrest scene.  While speaking to Newsome on his front porch, Haley observed the butt of a rifle behind the doorway.  Haley heard voices emanating from the house as he approached and

---

[1] A reasonable, articulable suspicion is not required in order to search "closets and other spaces immediately adjoining the place of arrest from which an attack could be launched."  Buie, 494 U.S. at 337.  Neither party argues that the protective sweep in the instant case involved an area "immediately adjoining" the place of arrest.

believed Newsome was engaged in "conversation" with another person. He continued to hear voices from the house interior after he placed Newsome under arrest. Sounds of a voice ongoing inside the house, but whose origin and nature could not be readily determined, were consistent with Haley's concern that someone might be present in the house. Further, Haley saw two rifle boxes on the porch on prior visits to Newsome's residence. These facts, in their totality, support the conclusion that Haley reasonably believed—as any prudent officer would—that a person was present inside the house and had access to weapons which could pose a threat to the safety of the officers on the arrest scene. We note further that Haley's protective sweep extended "only to a cursory inspection of those spaces where a person may be found" and lasted "no longer than [was] necessary to dispel the reasonable suspicion of danger." Id. Haley's protective sweep, therefore, did not violate Newsome's Fourth Amendment rights.

Newsome argues that Buie is distinguishable because the protective sweep in that case was performed subsequent to an "in-home" arrest. Id. at 337. Here, Newsome argues, the arrest took place outside the home, a factual distinction that renders Buie inapplicable. Nothing in Buie, however, establishes that the validity of a protective sweep turns on whether the arrest took place inside or outside the home. Rather, the determinative question is whether the police possessed a reasonable suspicion that the place to be swept harbored a danger to the officers on the "arrest *scene*." Id. at 334 (emphasis added). Here, the porch and the front doorway of the residence comprised the arrest scene because they constituted the locus of Newsome's arrest. From this location, Haley observed a rifle butt inside the house and heard voices coming from the interior. Thus, the potential danger existing inside the house (the place to be swept) posed a concurrent danger to the officers outside the house on the front porch and in the doorway (the arrest scene). See United States v. Hoyos, 892 F.2d 1387, 1397 (9th Cir. 1989), overruled on other grounds by United States v. Ruiz, 257 F.2d 1030, 1031 (2001) ("[W]hether the arrest

- 6 -

occurred inside or outside the residence does not affect the reasonableness of the officer's conduct. A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another."). Haley's sweep of the residence, designed to protect himself and the other officers from danger, was therefore entirely reasonable and consistent with Fourth Amendment principles. See, e.g., Bryant v. Commonwealth, 39 Va. App. 465, 471-72, 573 S.E.2d 332, 335 (2002) (noting that "in all Fourth Amendment cases, the touchstone . . . is 'reasonableness under the facts and circumstances of the case'" (quoting Weathers v. Commonwealth, 32 Va. App. 652, 658, 529 S.E.2d 847, 850 (2000)).

In light of these facts and authorities, we find that the protective sweep of Newsome's residence was lawful and did not taint the subsequent seizure of evidence. We thus affirm the trial court's denial of Newsome's motion to suppress.

## III. Newsome's Conviction Of Possession of Schedule II Drugs and Possession of A Firearm While In Possession of Schedule II Drugs Is Supported By Sufficient Evidence

### A. Standard of Review

"When faced with a challenge to the sufficiency of the evidence, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it. Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*)).

\* \* \* \* \* \* \*

Put another way, a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). We must instead ask whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319 (emphasis in original)); see also Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992) (observing that the question on appeal is whether 'a rational trier of fact could have found the essential elements' of the

convicted offense). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319)."

Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 662-63, 588 S.E.2d 384, 386-87 (2003)).

B.  Possession of Schedule II Drugs

The defendant argues the evidence was insufficient to convict him because the Commonwealth did not prove he had constructive possession of the Schedule II drugs found in the candy box in the living room of the house he shared with his mother.  By extension, he further argues his firearm conviction must fail because the Commonwealth did not prove he possessed the drugs.  We find no merit in his claim.

The illegal drugs were not in Newsome's physical possession at the time of his arrest. Thus, in order to sustain his conviction, the Commonwealth's evidence must show that Newsome constructively possessed the illegal substance.

> To prove constructive possession, "the Commonwealth must show that the defendant was 'aware of both the presence and character of the substance and that it was subject to his dominion and control.' Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984).  'Mere proximity to a controlled drug is not sufficient to establish dominion and control.' Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986)." Blake v. Commonwealth, 15 Va. App. 706, 708, 427 S.E.2d 219, 220 (1993).  Proximity is, however, a factor that can be considered "when determining whether the accused constructively possessed drugs." Brown v. Commonwealth, 5 Va. App. 489, 492, 364 S.E.2d 773, 774 (1988).

Copeland v. Commonwealth, 42 Va. App. 424, 439-40, 592 S.E.2d 391, 398 (2004).  Other factors which may be considered to determine whether constructive possession was established include the defendant's occupancy of the premises where the drugs are found, Staton v. Commonwealth, 36 Va. App. 282, 288, 549 S.E.2d 627, 629 (2001), large sums of money found

on the defendant or in the area where the drugs are found, <u>Wells v. Commonwealth</u>, 32 Va. App. 775, 783, 531 S.E.2d 16, 19 (2000) (citing <u>Hetmeyer v. Commonwealth</u>, 19 Va. App. 103, 111-12, 448 S.E.2d 894, 899-900 (1994)), and the defendant's "acts, statements or conduct," <u>Birdsong v. Commonwealth</u>, 37 Va. App. 603, 607-08, 560 S.E.2d 468, 470 (2002); <u>see</u> <u>Glenn v. Commonwealth</u>, 10 Va. App. 150, 154, 390 S.E.2d 505, 507 (1990). "Furthermore, the defendant may possess the drugs jointly with one or more other persons." <u>Copeland</u>, 42 Va. App. at 440, 592 S.E.2d at 398 (citing <u>Blake</u>, 15 Va. App. at 708, 427 S.E.2d at 220).

Here, the trial court found that Newsome constructively possessed the illegal drugs found in his residence, and the totality of the evidence establishes that the finding is not plainly wrong. Fourteen oxycodone pills were found in a plastic vial in a candy box in the living room of Newsome's home. Furthermore, various empty pill bottles, some of which contained Schedule III and IV drugs, were found in the defendant's bedroom. One bottle bore the name "Jody Patterson," and other bottles evidenced names that had been scratched off. A medication guide entitled "The Pill Book" also was found in the bedroom. It is undisputed that Newsome owned the home and lived there. Although his elderly mother also resided in the home, the evidence established that she did not take pain medication. Haley also found $2,289 in the candy box containing the plastic vial of oxycodone pills. The cash was arranged sequentially in descending order of denominations. Five twenty-dollar bills were found in Newsome's pocket when arrested. Newsome was not employed, and no explanation of the source of the funds was in evidence. The trier of fact could reasonably infer from this evidence that Newsome was engaged in illegal drug activity from which he derived the cash found in his home and on his person, that he was aware of the presence and character of the illegal drugs in his home, and that he exercised dominion and control over them. Thus, the trial court's determination that Newsome constructively possessed the drugs found in his own home is not plainly wrong.

C.  Possession of Firearm

Newsome does not contest the fact that he possessed the firearms found in his house.  He argues only that the Commonwealth did not prove he possessed the Schedule II drugs that were found in the house, an argument we reject *supra*.  The trial court thus properly found the evidence sufficient to convict Newsome of possession of a firearm while in possession of Schedule II drugs.

IV.  Conclusion

For these reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>