COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Frank and McClanahan
Argued at Richmond, Virginia


MELVIN P. WADE

MEMORANDUM OPINION[*] BY
v.      Record No. 0045-08-2       CHIEF JUDGE WALTER S. FELTON, JR.
                                          MARCH 10, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Jessica M. Bulos, Assistant Appellate Defender (Office of the
Appellate Defender, on briefs), for appellant.

Richard B. Smith, Special Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Following a bench trial, Melvin P. Wade ("appellant") was convicted of entering a

construction contract without holding the required license in violation of Code § 54.1-111. On

appeal, appellant contends the trial court "erred by accepting [his] guilty plea without first

adequately establishing whether [he] was aware of, and knowingly and voluntarily waived, his

numerous federal constitutional rights." He also contends the trial court "erred in finding the

Commonwealth's evidence sufficient to establish the amount of restitution owed by a

preponderance of the evidence." For the reasons that follow, we affirm the judgment of the trial

court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

Appellant was convicted in the general district court of entering a construction contract without holding the required license.[1]  He appealed that conviction to the trial court for a trial *de novo*, pursuant to Code § 16.1-136.  Following his arraignment in the trial court, appellant entered a plea of not guilty.  The following colloquy then took place between the trial court, appellant, and appellant's attorney, Mr. Anderson:

> THE COURT:  Mr. Wade, you are pleading not guilty to the charge of operating without a contractor's license.
>
> Sir, have you had ample opportunity to discuss this matter with Mr. Anderson?
>
> [APPELLANT]:  Yes.
>
> THE COURT:  Have you discussed any available witnesses that you may have to testify on your behalf?
>
> [APPELLANT]:  No.
>
> THE COURT:  Are there any witnesses?
>
> [APPELLANT]:  No.
>
> THE COURT:  If there were any witnesses you would have informed your attorney of the same; is that correct?
>
> [APPELLANT]:  Yes, sir.
>
> THE COURT:  Are you prepared to move forward today?
>
> [APPELLANT]:  Yes, sir.
>
> THE COURT:  Counsel ready?
>
> MR. ANDERSON:  Yes, sir.

The Commonwealth then called its first witness, Gilbert Debiasi, to testify.

---

[1] The general district court imposed a suspended sentence of twelve months in jail, and ordered that he pay $4,862 in restitution.

Appellant does not dispute that the evidence presented at trial showed that in August 2005, he entered into a $28,562 construction contract with Gilbert Debiasi, without having the required contractor's license to do so, and that the stationary on which his contract with Debiasi was written represented that he was a "Class A Contractor."

When appellant failed to complete the work he contracted to do, Debiasi reported the failure to the Virginia Department of Professional and Occupational Regulation (DPOR). Shelby Hill, a DPOR investigator, after investigating Debiasi's complaint, obtained a warrant for appellant's arrest for violating Code § 54.1-1115,[2] which prohibits "contracting for, or bidding upon the construction, removal, repair or improvements to or upon real property owned, controlled or leased by another person without a license . . . ."

Evidence at trial established that Virginia law required Debiasi to hold at least a "Class B" contractor's license in order to manage or perform work under his $28,562 construction contract with Debiasi.[3] At trial, during the Commonwealth's direct examination of Investigator Hill, the trial court initiated the following extended exchange with the Assistant Commonwealth's Attorney, Mr. Johnson, and appellant's attorney, Mr. Anderson:

> THE COURT: Excuse me, again, we are spending a lot of time on this case on a relatively straightforward issue. Unless the court is missing something, the sole issue is whether or not he ha[d] a valid contractor's license . . . .
>
> MR. JOHNSON: Right.
>
> THE COURT: Is that right or wrong?

---

[2] By agreement of the parties the warrant was amended to charge a violation of Code § 54.1-111. The trial court convicted appellant of violating Code § 54.1-111.

[3] Code § 54.1-111(A) provides in pertinent part: "It shall be unlawful for any person, partnership, corporation or other entity to engage in any of the following acts: 1. Practicing a profession or occupation without holding a valid license as required by statute or regulation." Code § 54.1-1100 provides in pertinent part that "'Class B contractors' perform or manage construction, removal, repair, or improvements when (i) the total value referred to in a single contract or project is $7,500 or more, but less than $120,000 . . . ."

MR. JOHNSON:  Yes, sir.

THE COURT:  That ought to be explained very easily.  Either he has one or he doesn't.  It's kind of like a yes or no question.  Or maybe it lapse[d], I don't know.  Am I missing something here?

          \*     \*     \*     \*     \*     \*     \*

THE COURT:  Before we go through this long song and dance, I trust there is a valid license that he had; is that right, Mr. Anderson?

MR. ANDERSON:  He has a valid license at this time, Your Honor.  But, again, the contention would be as to damages, not so much this issue as to whether there was a valid license or not.

          \*     \*     \*     \*     \*     \*     \*

THE COURT:  As you know, Mr. Anderson, there are two parts to a trial.  There is guilt phase and sentencing phase.  It sounds like there may not be an issue as to guilt phase.  I may be wrong, you may have evidence.

MR. ANDERSON:  No, there is no evidence as to that.  *But I didn't want to waive any of my client's rights by pleading guilty to something.*

THE COURT:  I understand.  But either you can elect to take another form of trial . . . , this is a class I misdemeanor, which can carry a jail sentence so you can elect a jury trial, but the Court is able to decipher, you know.  That's the difference between a Judge and a jury, we kind of know the law and can distinguish these things.

I understand where you are, but I don't think it's required to put on all of this testimony.  Either there is a license or there is not.  We can jump to sentencing on this.

MR. ANDERSON:  I think we can jump straight to sentencing.  And I do apologize for that, Your Honor, but I didn't want to –

          \*     \*     \*     \*     \*     \*     \*

THE COURT:  We can - - again, Mr. Anderson, the Court is not trying to force your hand.  You may have testimony to refute the fact that he is [not] a class A contractor, but it doesn't sound like there is that evidence.  I may be wrong.  That's what I perceive right now, correct?

MR. ANDERSON:  Yes, sir.

- 4 -

THE COURT: Why don't we go right into sentencing.

MR. ANDERSON: Yes, sir.

(Emphasis added).

Following the foregoing exchange, the trial court directly addressed appellant, who was seated at counsel table and had not been sworn:

THE COURT: Sir, if you would stand please.

Mr. Wade, based upon what has transpired so far, it's the Court's understanding that there is a stipulation to fact . . . that you will not be contesting the violation of this statute in that you were not properly licensed as required by statute; is that correct?

[APPELLANT]: Somewhat.

THE COURT: I don't want you to plead guilty to something that you are not guilty of.

[APPELLANT]: Can I make a statement?

THE COURT: Well, Mr. Anderson, why don't you talk to your client, because I'm almost feeling like he is playing games with the Court here and that not --

Was there a half a license that he had?

MR. ANDERSON: He had a business license[,] not a contractor's license.

THE COURT: Counsel understand there is a difference between a business license and a contractor's license?

MR. ANDERSON: Yes, Your Honor.

THE COURT: Again, I don't want to force your hand on this.

Therefore, Mr. Wade, do you understand . . . you do not have to plead guilty to this, but we can continue with the evidence, but if you feel that you are guilty we can move forward with this matter in another way.

[APPELLANT]: *I have an understanding of the license, yes. I didn't have the right license as we entered into this.*

- 5 -

THE COURT: All right. That being said we will accept your plea of guilty to contracting or bidding for construction without being properly licensed according to 54.1-1100.

We . . . can proceed with the sentencing phase of this trial.

(Emphasis added).

During the sentencing phase of the trial, Mr. Anderson conceded, "[m]y client does admit to contracting without a license." Prior to pronouncing sentence, the trial court engaged appellant in the following colloquy:

THE COURT: Is there anything you would like to say prior to the Court pronouncing sentencing?

[APPELLANT]: On the contractor's license part?

THE COURT: That's what we're here on, [y]es, sir.

[APPELLANT]: Yes. On the contractor's license part, even though [it] was my ignorance, I had a valid business license for [Cornerstone] Construction Management. And what I did was, I get contracts and I let other licensed people do the work. The only thing I did, was get it set up and make sure the work was done. I didn't know until [the DPOR investigator] came and knocked on my door and we talked, that I actually needed to have a contractor's license, even though I wasn't doing the work and sub everything out. I was unaware of that. Now that it's been brought to my attention, I know now and I'm guilty of that.

The trial court entered its final conviction order on January 9, 2008. That order states,

The defendant was arraigned and pled NOT GUILTY to operating without a contractor's license.

Upon representation of the Commonwealth's evidence, the defendant entered a plea of GUILTY.

After having been advised by counsel and by the Court of the right to trial by jury, the defendant knowingly and voluntarily waived trial by jury and with the concurrence of the attorney for the Commonwealth and of the Court, here entered of record, the Court proceeded to hear the evidence without a jury. The Court, having heard the evidence and argument of counsel, finds the defendant GUILTY . . . .

II.

On appeal, appellant contends the trial court erred by accepting his mid-trial change of plea to guilty, arguing "there is no affirmative showing that [he] ever expressly entered a guilty plea."

It is well settled that "[a] court speaks through its written orders." Robinson v. Commonwealth, 28 Va. App. 148, 155, 502 S.E.2d 704, 708 (1998) (citing Cunningham v. Smith, 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964)). Because "[a] recital of proceedings in a judicial order is an 'absolute verity and it is not subject to collateral attack,'" Kern v. Commonwealth, 2 Va. App. 84, 88, 341 S.E.2d 397, 400 (1986) (quoting Kibert v. Commonwealth, 216 Va. 660, 662, 222 S.E.2d 790, 791 (1976)), we presume "that [a trial] court order, as the final pronouncement on the subject, rather than a transcript that may be flawed by omissions, accurately reflects what transpired," Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979), cert. denied, 445 U.S. 972 (1980).

Appellant also contends the trial court erred by accepting his guilty plea "without first adequately establishing whether [he] was aware of, and knowingly and voluntarily waived, his numerous federal constitutional rights."

However, appellant never presented that argument to the trial court during the trial proceedings. "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court to Appeals to attain the ends of justice." Rule 5A:18; see Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18). "Rule 5A:18 applies to bar even constitutional claims." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

The purpose of Rule 5A:18 is "to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding

unnecessary appeals." Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002). Here, appellant never objected to the trial court that his guilty plea was not entered knowingly and voluntarily, nor did he ask the trial court within twenty-one days of the entry of the final judgment order to set aside its judgment of conviction, or ask it to modify the order to reflect that it did not adequately establish "whether [he] was aware of, and knowingly and voluntarily waived, his numerous federal constitutional rights" prior to accepting his guilty plea. See Rule 1:1. Nor did appellant ask the trial court to permit him to withdraw his plea of guilty pursuant to Code § 19.2-296.[4]

Appellant now asks that we invoke the "ends of justice" exception to Rule 5A:18. However, "[t]he ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." Copeland v. Commonwealth, 42 Va. App. 424, 442, 592 S.E.2d 391, 399 (2004) (citing Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000)). "In order to avail oneself of the exception, a[n] [appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989) (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). "'In examining a case for miscarriage of justice, we . . . determine whether the record contains *affirmative evidence of innocence or lack of a criminal offense*.'" Tooke v. Commonwealth, 47 Va. App. 759, 765, 627 S.E.2d 533, 536 (2006) (quoting Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004), rev'd on other grounds, 269 Va. 209, 608 S.E.2d 907 (2005)) (emphasis added).

In Allen v. Commonwealth, 27 Va. App. 726, 730, 501 S.E.2d 441, 443 (1998), the defendant contended that "the trial court failed to determine that his amended plea [of *nolo*

---

[4] Code § 19.2-296 provides in pertinent part that "the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea."

*contendere*] was entered voluntarily, intelligently and knowingly, and, thus, deprived him of liberty without due process of law." The defendant in <u>Allen</u> failed to preserve for appeal his claim that the trial court did not determine whether his mid-trial change of plea from not guilty to *nolo contendere* was knowing and voluntary. He asked the Court to apply the ends of justice exception to Rule 5A:18. We declined to apply the ends of justice exception there and affirmed the defendant's conviction, finding he "was afforded the constitutional rights afforded a defendant who pleads not guilty" and that "the trial court's acceptance of [his] mid-trial plea caused no retrospective waiver of any rights." <u>Id.</u> at 732, 501 S.E.2d at 444.

As did the defendant in <u>Allen</u>, the appellant here proceeded to trial without a jury, pled not guilty, confronted the Commonwealth's witnesses who testified in his presence, and then changed his plea to guilty, admitting that he violated Code § 54.1-111. The record on appeal does not demonstrate that appellant was innocent of the offense for which he was convicted.

The Commonwealth was required to prove that appellant was required by Virginia law to hold a contractor's license in order to perform or manage the work he contracted to do for Debiasi, and to prove that appellant engaged in that activity without having the required license. Both appellant and his attorney admitted in open court to the trial judge that he did not have the required license. Appellant's counsel informed the trial court that appellant was contending only the amount of the "damages" claimed by Debiasi, not whether he had a valid license.

The appellant having admitted in open court that he did not have the required license, there is "no basis upon which to apply the ends of justice exception to this case." <u>Copeland</u>, 42 Va. App. at 442, 592 S.E.2d at 399. Accordingly, we decline to apply the ends of justice exception to Rule 5A:18. <u>Ohree</u>, 26 Va. App. at 308, 494 S.E.2d at 488.

III.

Appellant also contends the trial court "erred in finding the Commonwealth's evidence sufficient to establish the amount of restitution owed [by appellant] by a preponderance of the evidence."

> The statutory scheme for ordering restitution was established by the Virginia legislature as a conjunct of suspended sentences. Its purpose is to help make the victim of a crime whole. Although historically denominated a criminal penalty, restitution under Virginia law may be more accurately characterized as quasi-civil in nature. Restitution is a monetary amount that reflects the "damages" or "loss" caused by the crime. Part of the sentencing phase of trial, the amount is determined following conviction and is a matter resting within the sole province of the sentencing judge.

McCullough v. Commonwealth, 38 Va. App. 811, 815, 568 S.E.2d 449, 450-51 (2002) (citations omitted). "[T]he 'damages' or loss incurred by an aggrieved party as a result of the offense need only be proved by a preponderance of the evidence." Id. at 816, 568 S.E.2d at 451. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder[,] who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "On review, we will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224 (2007). A trial court does not "err by relying on [] victim loss statements to determine a reasonable amount of restitution." Smith v. Commonwealth, 52 Va. App. 26, 34, 660 S.E.2d 691, 694-95 (2008).

Here, the Commonwealth presented both documentary and testimonial evidence during the sentencing phase of appellant's trial that Debiasi contracted with three different people to complete the work left unfinished by appellant and that the total amount he expended on that work was $9,868. Appellant presented no evidence to the trial court to contradict the Commonwealth's evidence. Accordingly, we conclude the trial court did not "err by relying on

victim loss statements to determine a reasonable amount of restitution" in this case.  See Smith,

52 Va. App. at 34, 660 S.E.2d at 694-95.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.